UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| United States of America *Plaintiff* | * * * |
| v. | * Case No. 0416 1:21 CR-00334-002 * |
| Eric Nji *Defendant* | * * * * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## SENTENCING MEMORANDUM OF ERIC NJI

I. Background, History and Community Activities

Mr. Nji is a 42 year old man who is a United States citizen. Mr. Nji was born in Cameroon and is considered to be an English or English speaking Southern Cameroonian. Mr. Nji came from a large Cameroonian family. He immigrated to the United States in 2007. Mr. Nji has a wife and three children with whom he lives in Waldorf, MD. He holds a Bachelor's Degree in accounting and an MBA degree in accounting and information systems management. He has no prior record of any criminal convictions or criminal charges.

Southern Cameroon was, prior to 1961, a British Colony. On October 1st, 1961, British Southern Cameroon gained its independence from Great Britain. At that time Southern Cameroon was joined to French Cameroon under a federal system of government. Under this system of government, French Cameroon and English Cameroon would be equal states and would comprise the country known as the Federal Republic of Cameroon. No treaty between the two states was ever concluded to this end. In 1972 France used the local administration to abolish the federal system of government under which the two independent states were brought together. Subsequently, France used its military power to coerce and annex the territory of English Cameroon. Since November of 2017, France has supplied arms, trained the military and provided technical support to the Republic of Cameroon's war effort in Southern Cameroon. The current crisis was triggered when the national government replaced the English educational and legal system with a French educational and French legal system. As a result of the foregoing

events, the Southern Cameroonians engaged in peaceful demonstrations and peaceful resistance.

The response to these demonstrations and resistance has been violent military action by the national government with the support of the French government. Lawyers were beaten and their wigs and robes were ripped off. University students were removed from their hostels, tortured, dragged through sewage and raped. Helicopter gunships fired upon peaceful demonstrations. These actions led to a further escalation of military activity in which whole villages were burned, the occupants were massacred, and there were mass killings of civilians including women, children and elderly persons all of whom were noncombatants. The extent of these burnings and killings led to a refugee crisis of over two million internally displaced persons, over one hundred thousand refugees in Nigeria and the burnings of over eight hundred villages. The English Cameroonians finally responded with armed force of their own. Photographs of these actions are attached to this Memorandum as an exhibit.

Mr. Nji's village, the Nsongwa Village, was attacked several times by government troops. On these occasions the houses in the village were burned and villagers were killed including Mr. Nji's grand uncle who was burned alive in his home. Twenty people in Mr. Nji's village alone have been killed. In 2021, Mr. Nji's uncle was killed by the government while on his way to church. His body was dumped on the side of the road. Additionally, three of Mr. Nji's cousins were killed by government troops. Their bodies were also dumped by the side of the road. Mr. Nji was forced by these events to relocate his father and two sisters to another part of the country in order to preserve their safety. As a result of this move, the family lost its farm which was its sole source of income. Mr. Nji, for the past three years, has been supporting them by sending money for their rent and food.

As a result of these events, Mr. Nji became involved in Cameroonian events and activities in the United States. He attended protests at the United Nations and at the U.S. Capitol. He met other Cameroonians who convinced him of the need for becoming involved in the defense of Southern Cameroonians.

On two occasions in 2015 and 2016 he became involved in sending legal shipments of such items as automobiles, household goods, rice, vegetable oils, toothpaste, tooth brushes and various legal medicines to Cameroon. The instant case was the first

time in which Mr. Nji was involved in shipments of arms and ammunition. That shipment, however, also included substantial amounts of medicines, food items, clothing and desks and chairs for school children. Mr. Nji's interest always was and is primarily one of a humanitarian nature.

In furtherance of these activities, Mr. Nji joined and became vice president of an organization known as African Diaspora Community. This organization was a nonprofit organization which raised money to send to Nigeria to fund vocational centers for displaced Cameroonians to learn various occupations by which they could become self-supporting. Since 2017, Mr. Nji has been involved in donations of as much as $500.00 to $1,000.00 for this cause which also includes a displaced persons center for Cameroonian refugees.

Mr. Nji also makes monetary contributions to Edda NGO which is a national government organization based in Cameroon which provides medical support for displaced Cameroonians as well as living accommodations and vocational training. These monies also provide surgical expenses for Cameroonians injured in the war as well as school fees for Cameroonian children.

Mr. Nji was also president of NDECA USA, a village development association located in the United States. This organization raises money to provide portable water projects, sanitation and food for displaced Cameroonians from his home village in Cameroon.

From 2013 to the present Mr. Nji was a president of his village student union. That position involved raising monies to fund scholarships for students from his home village in Cameroon.

In 2018, Mr. Nji was invited to a meeting of Ambiland Kwifor in Bowie, Maryland. This organization raised money for humanitarian aide as well as for the purchase of arms for the defense of Southern Cameroonians. These monies were specifically used to buy arms in the United States for shipment to Nigeria and Cameroon as well as to provide humanitarian assistance. Mr. Nji always believed that these activities were legal and never denied his participation in these activities or his responsibilities for his actions as part of this organization. Aside from these activities, Mr. Nji has worked as a computer engineer for Oracle and Sharepoint. From 2015 to the

present he has mentored and trained approximately 1500 people for the purpose of performing and finding such employment.

All of the above referenced activities should be taken into account in the determination of Mr. Nji's sentence as they constitute a long standing and substantial contribution to the community. All of Mr. Nji's actions were made to better the Cameroonian community and with no intent to violate the law even though some of his actions were subsequently found to be a violation of the law.

II. <u>Sentencing Guidelines</u>

1. Adjustment for Obstruction of Justice – a defendant's denial of guilt, other than perjury, or a defendant's refusal to admit guilt or a refusal to enter a plea of guilty is not a basis for the application of this adjustment. Not all inaccurate statements or testimony necessarily reflect a willful attempt to obstruct justice. The two levels should not be imposed especially since they may be duplicative of the failure of acceptance of responsibility for which Mr. Nji was given no credit.

2. Specific Offense Characteristics – Mr. Nji was given 6 levels for an offense involving 28 firearms pursuant to §2K2.1(b)(1)(C). The offenses for which Mr. Nji was convicted were all based upon the fact that Mr. Nji was found to have knowledge that the firearms that were shipped had obliterated serial numbers. Mr. Nji was given 6 levels based upon the assumption that 28 firearms with obliterated serial numbers were the subject of the offenses for which the jury found Mr. Nji guilty. In paragraph 29 of the presentence report it is admitted that the government did not prove that Mr. Nji knew that serial numbers on all 28 firearms had been obliterated. Based upon this fact and the fact that the government did not prove the number of obliterated firearms which were known by Mr. Nji, Mr. Nji is entitled to the minimum number of levels of adjustment for the minimum number of obliterated firearms. §2K2.1(b) provides for 2 levels for a number of between three and seven such firearms. Because there are no adjustment for 1 or 2 such firearms, Mr. Nji should receive no adjustments.

3. Acceptance of Responsibility – Mr. Nji received zero enhancements for acceptance of responsibility, yet the presentence report does not specifically state

the basis for this conclusion. A defendant is not required to admit conduct beyond the offense of conviction. Mr. Nji did not deny his conviction and he in fact admitted to a number of facts which the government presented and/or proved at trial. His mere denial that he was unaware of the obliteration of serial numbers does not constitute a denial of the conviction or a denial of responsibility. His denial that he did not know of the absence of a required export license or permit was a fact upon which he was found not guilty as to counts 2 and 3. Mr. Nji should receive a two level reduction for acceptance of responsibility.

4. Trafficking in Firearms – Mr. Nji was assessed four levels for this offense characteristic. The pretrial report assessment does not set forth the factual basis for the conclusion of trafficking and so it is not clear as to what conduct of Mr. Nji would constitute trafficking.

*(signature)*
Richard S. Basile
Law Offices of Richard S. Basile
CPF: 7800610005
6305 Ivy Lane #510
Greenbelt, MD 20770
T: (301) 441-4900
F: (301) 441-2404
rearsb@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this _____7_____ day of March 2023, a copy of the foregoing line of appearance was mailed via first class mail, postage prepaid, and/or via electronic mail to:

Kathleen Gavin
Judson Mihok
36 South Charles Street
Suite 400
Baltimore, MD 21201
Kathleen.gavin@usdoj.gov

Glenn Ivey 6411 Ivy Lane
Suite 304
Greenbelt, MD 20770
ivey@iveylevetown.com

David Benowitz
409 7th Street N.W. #200
Washington, D.C. 20004
david@pricebenowitz.com


_____
Richard S. Basile
Law Offices of Richard S. Basile
CPF: 7800610005
6305 Ivy Lane #510
Greenbelt, MD 20770
T: (301) 441-4900
F: (301) 441-2404
rearsb@gmail.com